**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Viola Mae Brittner,<br><br>                                                Debtor.<br><br>Viola Mae Brittner,<br><br>                                                Plaintiff,<br>v.<br><br>Beach Anesthesia, LLC,<br><br>                                                Defendant. | Case No. 20-02454-DD<br><br>Adv. Pro. No. 20-80053-DD<br><br>Chapter 7<br><br>**ORDER** |

This adversary proceeding is before the Court for an alleged violation of the automatic stay. Plaintiff Viola Mae Brittner, filed a Complaint on July 16, 2020, seeking actual and punitive damages, costs, and attorneys' fees. Defendant Beach Anesthesia, LLC answered on August 17, 2020. A trial was held on April 27, 2021, and the Court took the matter under advisement. After further consideration and for reasons set forth below, the Court finds for Defendant.

**FACTS**

Plaintiff, an eighty-one (81) year old individual, filed a chapter 7 bankruptcy petition on June 8, 2020. She disclosed in her bankruptcy papers two medical debts owed to Defendant in the sums of $579.47 and $1,995.00. Notice of Plaintiff's bankruptcy filing was sent to her list of creditors by the Bankruptcy Noticing Center on June 9, 2020. Defendant was listed twice on the list of creditors, once for each debt. ResourceOne Medical Billing, LLC ("ResourceOne"), retrieves Defendant's mail as part of its billing services contract with Defendant. It retrieved the notices of Plaintiff's bankruptcy on June 15, 2020, and scanned the documents into its computer system on June 16 or 17, 2020, but they were not processed at that time. On June 25, 2020, a

vendor for ResourceOne generated and transmitted the billing statement at issue, requesting Plaintiff make a payment to Defendant on her $579.47 debt.  This statement was received by Plaintiff on July 2, 2020.  In the meantime, the ResourceOne employee responsible for handling Defendant's account processed Plaintiff's notice bankruptcy on June 29, 2020, which wrote-off the debt and closed Plaintiff's account.

Plaintiff testified that she received the bill on Thursday, July 2, 2020.  Due to the intervening federal holiday, she did not contact her attorney until the following Monday or Tuesday, July 6 or 7, 2020. Without contacting Defendant or its agents, Plaintiff's counsel commenced this litigation on July 16, 2020, seeking a restraining order prohibiting further billing statements and an award of damages.

Plaintiff stated that when she received the statement, she was worried and embarrassed she forgot to report this debt and would have to pay it. She testified that she was unable to eat or sleep, and suffered severe emotional distress, including what she described as increased "heart gurgling," from the time she received the statement until she spoke with her attorney a few days later. Plaintiff admitted she has suffered from a heart condition for more than twenty (20) years and had a major heart attack approximately two years ago, causing intermittent heart palpitations. However, she testified the invoice caused extra stress and worsened her heart condition.

Plaintiff stated that she called her cardiologist regarding the heart palpitations and made an appointment for September 2020, where she was prescribed Entresto, a medicine for patients with chronic heart failure. She testified that this prescription greatly helped her condition. Plaintiff did not supply during discovery or introduce at trial any medical records to support her testimony or claim for damages. Plaintiff also testified that she incurred attorneys' fees in this

matter, totaling $22,972.95. She opined that the work and fees of the two attorneys representing her were actual, reasonable, and necessary to her pursuit of relief.

As regards damages, Plaintiff did not pay funds to Defendant and seek recovery of the funds. She did not suffer a loss of wages or income. She did not assert other out of pocket expenditures or assert or prove any other pecuniary loss.

Dr. Joseph A. Maggioncalda, the owner and managing member of Defendant, testified that Defendant has a long-standing policy of writing-off patients' debts and closing accounts once it receives notice of a patient's bankruptcy filing. Defendant has a contract with ResourceOne whereby Defendant is provided with patient billing services and ResourceOne implements Defendant's policies without discretion. Neither ResourceOne nor Defendant pursued collection of Plaintiff's debts once aware of the bankruptcy filing. Defendant did not file a proof of claim in Plaintiff's bankruptcy case and does not file proofs of claim in bankruptcy cases as a matter of practice.

Mr. Michael Bowe, the principal and owner of ResourceOne, testified that at times relevant here, ResourceOne was adopting substantial changes to its business practices in response to the COVID-19 pandemic and referenced the City of Columbia, South Carolina local ordinance requiring businesses to take additional health and safety precautions.[1] In connection with medical billing services, ResourceOne utilizes a model whereby one employee picks-up mail for several different clients from differing locations and delivers that mail to ResourceOne's office, another employee scans all the mail into a secure computer system, and a third employee, known as a medical billing & tracking specialist ("MBTS"), reviews and processes the scanned mail. Bowe testified that this process is normally completed in three to five business days but

---

[1] *Emergency Ordinance Requiring that Face Coverings or Masks Be Worn in Public in The City of Columbia During the COVID-19 Public Health Emergency and Recovery*, Ordinance No. 2020-059 (Jun. 23, 2020).

increased to ten to fifteen days due to new COVID protocols and staff working remotely or not at all. The MBTS assigned to Defendant's account was unable to work during parts of June due health conditions, creating an additional delay in ResourceOne's process here. The MBTS for Defendant's account returned to work after the invoice was mailed to Plaintiff and then processed Plaintiff's notice of bankruptcy filing, writing off the debt and closing the account.

Bowe also testified, without objection, that shortly after this adversary proceeding commenced, Plaintiff's counsel contacted ResourceOne and offered to settle this matter to avoid further litigation. Bowe informed Plaintiff's counsel that the debts were written-off and no further invoices would be generated. ResourceOne refused to offer a settlement payment on behalf of Defendant because, according to Bowe, ResourceOne did not intentionally violate the automatic stay and Defendant already provided the debt relief Plaintiff sought. Plaintiff testified that she was not made aware that her debts had been written-off.

## ANALYSIS

A petition commences a bankruptcy case and operates as a stay of actions to recover pre-petition claims from debtors. *See* 11 U.S.C. §§ 301(a), 362(a)(1). The automatic stay "serves a crucial function in any bankruptcy case and willful violations under § 362(h)[2] are serious matters warranting the mandatory imposition of sanctions that Congress has proscribed." *In re Brock Utils. & Grading, Inc.*, 185 B.R. 719, 720 (Bankr. E.D.N.C. 1995). "The function of the automatic stay is to stop collection efforts against a debtor, outside of the bankruptcy proceeding . . ." *In re Peterson*, 297 B.R. 467, 470 (Bankr. W.D.N.C. 2003); *see also Budget Serv. Co. v. Better Homes of Va., Inc.*, 804 F.2d 289, 292 (4th Cir. 1986) ("The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws" (citations omitted)).

---

[2] The current § 362(k) was previously styled as § 362(h) until an amendment in 2005.

4

Section 362(k) provides the debtor a remedy for a violation of the automatic stay. An "individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1). "[A] willful violation of the automatic stay occurs when a 'creditor knows of the pending bankruptcy petition and intentionally attempts to continue collection procedures in spite of it.'" *Weatherford v. Timmark (In re Weatherford)*, 413 B.R. 273, 285 (Bankr. D.S.C. 2009) (quoting *Budget Serv. Co.*, 804 F.2d at 293)). "To constitute a willful act, the creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." *Citizens Bank of Md. v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994), *rev'd on other grounds,* 516 U.S. 16, 116 S. Ct. 286, 133 L. Ed.2d 258 (1995) (citations omitted).

In order to recover damages for an alleged willful violation of the stay, the plaintiff must establish that: (1) a bankruptcy petition was filed; (2) the debtor is an "individual" under the automatic stay provision; (3) the creditor received notice of the petition; (4) the creditor's actions were in willful violation of the stay; and (5) the debtor suffered damages. *Davis v. Kohler (In re Davis)*, 498 B.R. 64, 68 (Bankr. D.S.C. 2013) (quoting *Weatherford*, 413 B.R. at 284); *In re Sammon,* 253 B.R. 672, 680 (Bankr. D.S.C. 2000). Thus, to recover damages under § 362(k), "the debtor must show that the creditor's violation of the automatic stay was willful and that the debtor was injured." *In re Preston*, 333 B.R. 346, 348 (Bankr. M.D.N.C. 2005) (citing *Budget Serv. Co.*, 804 F.2d at 293 ("Proof that a debtor has been injured by a willful violation of the automatic stay is sufficient to invoke the sanctions under [§ 362(k)].")). The plaintiff bears the burden of proving these elements, including damages. *In re Warren*, 532 B.R. 655, 660 (Bankr.

5

D.S.C. 2015) (citing *Bolen v. Mercedes Benz. Inc. (In re Bolen)*, 295 B.R. 803, 807 (Bankr. D.S.C. 2002)).

Here, a petition was filed and Plaintiff is an individual protected by the automatic stay. The parties dispute whether Defendant "received" notice of the petition before it sent the billing statement and whether Defendant's actions constitute a willful violation of the stay. "Knowledge of the bankruptcy 'is the legal equivalent of knowledge of the stay' and when a creditor acts intentionally with knowledge of the bankruptcy then the violation becomes willful, regardless of whether the creditor had a specific intent to violate the stay." *Weatherford*, 413 B.R. at 284 (quoting *In re Galmore*, 390 B.R. 901, 907 (Bankr. N.D. Ind. 2008)). In other words, the willfulness component applies to whether Defendant, or its agents, intended to send a billing statement to Plaintiff – not whether Defendant intended the sending of the billing statement to violate the stay. *Id.* at 285 ("A 'willful violation' does not require specific intent to violate the automatic stay. Rather the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional." (quoting *In re Johnson*, C/A No. 97-06698-W, 2001 WL 1806979, at *5 (Bankr. D.S.C. Jun. 26, 2001))). Processing Plaintiff's notice of bankruptcy in Defendant's computer system, and therefore Defendant's actual knowledge of Plaintiff's bankruptcy case, was delayed by the COVID-19 pandemic and resulting adjustments of Defendant's business practices. However, whether the Court should adopt a general exception to the "received notice" element because of implications from the COVID-19 pandemic and how long such notice should be delayed need not be considered here because Plaintiff failed to establish damages, precluding recovery under her § 362(k) cause of action.

"For purposes of Section § 362(k), actual damages should be awarded only if there is concrete evidence supporting the award of a definite amount." *Chavez-Romero v. Coventry Credit Union (In re Romero)*, Adv. Pro. No. 10-80051-HB, 2010 WL 4863781, at *7 (Bankr. D.S.C. Nov. 23, 2010) (quoting *In re Rawles*, C/A No. 08-00555, 2009 WL 2924005, at *2 (Bankr. D. Md. June 18, 2009)). "Section 362(k) allows the Court to award punitive damages in appropriate circumstances, such as where the creditor's conduct was intentional or egregious . . ." *In re Banks*, 612 B.R. 167, 174 (Bankr. D.S.C. 2020). "A debtor, however, has a duty to mitigate any damages that may occur as a result of a stay violation." *Preston*, 333 B.R. at 350 (citations omitted); *see also Skillforce, Inc. v. Hafer*, 509 B.R. 523, 531 (E.D. Va. 2014) ("In addition, courts have also held that the duty to avoid automatic stay violations is not solely on the creditor; there is also a duty on the debtor to protect her rights and mitigate her damages." (citations omitted)).

Plaintiff testified that she was mad, angry, and thought she made a mistake by omitting from her bankruptcy documents Defendant or one of her accounts with Defendant. Until she spoke with her attorney, she described her experience as a miserable five or six days. Plaintiff claimed she suffered anxiety, crying, "heart gurgling," and her chronic medical conditions were exacerbated. However, Plaintiff's heart condition is pre-existing and she did not see a doctor until months after receiving Defendant's billing statement. Plaintiff did not provide any evidence or medical records to substantiate her emotional distress, including documentation of her subsequent doctor's visit and the diagnosis requiring her new prescription.  Therefore, Plaintiff has failed to meet her burden of demonstrating actual damages or that punitive damages are appropriate here.

Rather, Plaintiff's attorney could have alleviated much of her distress by confirming that all accounts with Defendant were properly listed in her bankruptcy documents, which were recently reviewed and signed by Plaintiff. Given the timing of events, her counsel could have also suggested that Defendant's billing statement passed the bankruptcy notice in the mail or in routine processing. Instead, counsel commenced this adversary proceeding without contacting Defendant or ResourceOne beforehand. When he conversed with a representative from ResourceOne shortly after filing, counsel was informed Plaintiff's debts were written off and would no longer be pursued. Nevertheless, counsel refused to dismiss this adversary proceeding without some payment to Plaintiff.

Plaintiff testified that no one, to the date of trial, informed her the debts were written-off and would not be pursued by Defendant.

The Court is not seeking to establish a bright line rule requiring contact prior to initiating suit under § 362(k), or to impose a duty to warn or educate as to the stay first. However, Plaintiff does have a duty to mitigate damages, which may be satisfied by these methods. *See, e.g.*, *Peterson*, 297 B.R. at 472 (denying debtor's request for sanctions against creditor that mistakenly executed an auto-draft on debtor's account after it received notice of her bankruptcy but then repaid debtor, and finding counsel's filing of an action shortly thereafter without contacting the creditor and continuing pursuit of the action were "efforts designed as much to mine fees out of this situation as it was to solve the problem for the debtor."); *Preston*, 333 B.R. at 350-51 (finding the debtor failed to mitigate damages by allowing the creditor only two to three days to correct the situation before filing a motion for sanctions and the "matter could have been resolved without the necessity for Court intervention had counsel taken the time to properly communicate with each other."); *Brock Utils.*, 185 B.R. at 720 (awarding no damages where the

8

debtor suffered no injury because prior to filing the motion for sanctions, debtor's counsel received reassurances from the creditor that the computer-generated collection notice would not be pursued). Here, contact between the parties before filing the adversary proceeding would have confirmed that Defendant knew of Plaintiff's bankruptcy case and was taking no further steps to collect its debts. At that time, there were no actual damages other than minimal attorneys' fees for conversations with Plaintiff. Instead, Plaintiff's attorney pursued this adversary proceeding to trial and generated $22,972.95 in fees.

Under the circumstance here, considering the impact of COVID-19, changes in business practices, the brief time that transpired, and the lack of effort to mitigate damages, even if Defendant's actions constitute a willful violation of the stay, the fees requested by Plaintiff are not reasonable. The complete absence of other actual, measurable damages before these attorneys' fees were incurred and the fact that this matter could easily have been avoided further warrant denial of this request. No damages have been proven and the attorneys' fees were not reasonably incurred. For these reasons, the Court finds for Defendant.

The Court also notes this litigation has been acrimonious and unnecessarily adversarial[3]. Plaintiff's counsel argued that Defendant's answer could not properly contain a motion to dismiss – it can. There was a dispute because Defendant's counsel sent a copy of its Answer directly to Plaintiff. Although this was inappropriate, a simple telephone call should have preceded the resulting motion for sanctions and claims of unethical conduct instead of the Court ultimately determining it was a paralegal mistake. There was also an unnecessary dispute over a corporate disclosure form that is designed to inform the judge, not the parties, of connections.

---

[3] The Court notes that counsel even uses the term "adversarial proceeding" in captioning the pleadings. In Bankruptcy Court the proper noun for the equivalent of civil litigation is adversary proceeding. See Fed. R. Bankr. P. 7001

One of the time entries for Plaintiff's counsel includes "Research of Defendant and Defendant's Registered Agent," calling further into question counsel's insistence on a disclosure form. A motion for summary judgment was filed although it was, or should have been, clear that there were material facts in dispute. In fact, the joint pre-trial stipulation and statement of issues for trial required by the Court, filed shortly after the motion for summary judgment, notes issues of damages and obvious disagreements concerning the notice of bankruptcy filing. Summary judgment can be a useful tool, but a motion is not necessary or even appropriate when facts remain to be litigated and other, agreed facts can be easily stipulated. While enforcing the stay through vigilant action to protect debtors is an important safeguard provided by the Bankruptcy Code – and the Court in no way wishes to discourage needed and proper enforcement – failing to resolve matters that do not need Court intervention only serves as a detriment to those the statute is intended to protect.

## CONCLUSION

For the reasons set forth above, the Court finds that Defendant did not willfully violate the automatic stay and cause compensable damages. Plaintiff is not entitled to relief pursuant to § 362(k).

**IT IS SO ORDERED.**

**FILED BY THE COURT**
**06/10/2021**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 06/10/2021